**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GIOVANNI NDREA,

        Plaintiff,

v.

CITY OF UTICA MAYOR GUS
CALNADRINO and CITY OF
UTICA POLICE CHIEF
MATTHEW KALUZNY,

        Defendants.

Case No. 2:24-cv-13240
District Judge Brandy R. McMillion
Magistrate Judge Anthony P. Patti

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 22)

**I.**    **RECOMMENDATION**: The Court should **GRANT** Defendant's motion

for summary judgment. (ECF No. 22.)

**II.**    **REPORT:**

    **A.**    **Background**

Plaintiff Giovanni Ndrea, proceeding *in pro per*, initiated this action against

City of Utica Mayor Gus Calandrino and City of Utica Police Chief Matthew

Kaluzny on December 5, 2024.  (ECF No. 1.)  Plaintiff states that he ran for state

representative in the 2022 election and that the City of Utica removed his political

sign from his front yard two times.  (ECF No. 1, PageID.5.)  He also alleges that he

was removed from a City Council meeting in August 2024, and that in September of 2024 he asked to make a FOIA request but was denied.  (*Id.*)  Plaintiff further alleges that on each occasion he was treated rudely with City employees telling him that he is "stupid," or "not important," or making the employee "angry."  (*Id.*)  His hand-written complaint is a bit unclear, but he seems to assert claims for violations of his First and Fourth Amendment rights, a violation of the Civil Rights Act, and a violation of 18 U.S.C. § 242.  (ECF No. 1, PageID.4.)

The matter was referred to me by Judge Brandy R. McMillion "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."  (ECF No. 8.)

Defendants filed a motion for summary judgment on July 15, 2025.  Plaintiff filed a two-page, handwritten response on August 8, 2025, and Defendants filed a reply on August 11, 2025.[1]  (ECF Nos. 25, 26.)

## B.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[1] The response was mistakenly docketed as a motion, and the reply was mistakenly docketed as a response, both of which the Court has ordered corrected by Text Order.  (ECF Nos. 25, 26.)

2

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

### C.     Discussion

#### 1.  Undisputed Facts

In support of Defendants' motion, Defendants set forth a Statement of Material Facts, with proper citations to record evidence, as required by my February 10, 2025 Scheduling Order.  (ECF No. 22, PageID.80-84.)  In response, Plaintiff filed a two page, hand-written response, which does not specifically

identify any factual disputes or in any way respond to Defendants' proffered facts.

(ECF No. 25.)  Accordingly, the Court adopts Defendants' facts as undisputed.

(*See* ECF No. 10, PageID.34 ("Any proffered fact in the movant's Statement of

Material Facts that is not specifically contested will, for the purpose of the motion,

be deemed admitted.").)

> 1. In his Complaint, Plaintiff first alleges that, "The City of Utica removed 2 times [his] political signs from [his] front yard." (ECF No. 1, PageID.5).
>
> 2. However, Plaintiff fails to state *who* allegedly stole his political signs, and there is absolutely no evidence whatsoever suggesting that a city representative stole them—let alone that Mayor Calandrino or Police Chief Kaluzny stole them. (ECF No. 1, PageID.5).
>
> 3. Plaintiff then claims that he made a complaint with the police, but they told him that he was "not that important to follow up." (ECF No. 1, PageID.5).
>
> 4. But contrary to Plaintiff's assertion, the Utica Police Department did in fact author a police report reflecting Plaintiff's complaint. (See **Exhibit 1** – Utica Police Department Case Report).
>
> 5. Lastly, Plaintiff asserts that he was removed from the August 13, 2024 City Council meeting by Police Chief Matthew Kaluzny under the threat of arrest and coercion. (ECF No. 1, PageID.5).
>
> 6. Although not stated specifically in his Complaint, Plaintiff is presumably alleging that he was removed from the public meeting based on his national origin. (See **Exhibit 2** – Plaintiff's Department of Civil Rights Complaint).
>
> 7. However, the video of this meeting can be found at https://www.youtube.com/watch?v=xys4YcE2UjY and Plaintiff was clearly

removed due to his disruptive behavior throughout the meeting. (See **Exhibit 3** – Clipped August 13, 2024 City Council Meeting Video and Transcription, 14:50-15:11, 20:25-23:05).

8. At the August 13, 2024 City Council meeting, a resident by the name of Michael Quatrine was seeking approval to set up a temporary tent at 45015 Van Dyke from August 14, 2024 to November 10, 2024 to sell election and sports-related merchandise. (See Exhibit 4 – August 13, 2024 City Council Meeting Minutes, p. 1).

9. However, other residents had concerns about the increased traffic at the intersection of Hall Rd. and Van Dyke Rd. which is why the Planning Commission voted unanimously against recommending approval to Council. (*Id.*).

10. Prior to City Council's vote on Michael Quatrine's request to set up a temporary tent at 45015 Van Dyke from August 14, 2024 to November 10, 2024, Mayor Gus Calandrino opened up the floor for public comment on the item. (Exhibit 3, 0:00-0:15).

11. Plaintiff took the podium and expressed his support for allowing Mr. Quatrine to set up a temporary tent, stating that everybody has a right to do business. (Exhibit 3, 0:10-5:51); (Exhibit 4, p. 1).

12. City Council allowed Plaintiff to speak freely for 5 minutes and 30 seconds without interruption on this issue. (Exhibit 3, 0:10-5:51).

13. City Council ultimately voted to deny Mr. Quatrine's request to set up the temporary tent. (Exhibit 3, 7:13-10:45); (Exhibit 4, p. 3).

14. After the denial, Plaintiff was having a conversation with a gentleman while another resident was speaking to City Council about a different item on the Agenda. (Exhibit 3, 14:50-15:11).

15. Mayor Calandrino asked Plaintiff and the gentleman to show the resident some respect and not to speak while the resident was speaking. (*Id.*).

16. Plaintiff again spoke out of turn five minutes later and Mayor Calandrino eventually asked Chief Kaluzny to remove Plaintiff for his

disruptive behavior:

Ndrea: No comments on that?

Calandrino: No.

Ndrea: Why not?

Calandrino: Sir we have public comments in the beginning of the meeting for any item on the agenda. Guess what? This is an agenda item so you lost your opportunity. Please be quiet, we're continuing with the meeting.

Ndrea: What did you say?

Calandrino: Please be quiet. We --

Ndrea: Who are you to tell me to be quiet?

Calandrino: I'm the mayor and I'm the chair of this board right now.

Ndrea: You work for me.

Calandrino: I do work for you, but right now I'm trying to do my job for all residents.

Ndrea: Asking a question.

Calandrino: You are out of order, sir.

Ndrea: You are out of order. Yeah, you are out of order.

Unknown male: You got to be nicer.

7

Ndrea: You have to be nicer because I --

Calandrino: You are not being nice.

Ndrea: I don't do anything to you.

Calandrino: We are trying to have a meeting here. We have clear rules about when the public can comment. There is a --

Ndrea: You are out of order. You don't own this building.

Calandrino: Should we get a vote to recess this meeting?

Unknown female: No, just have him removed.

Calandrino: Sir, this is your last warning. Are you going to be quiet?

Ndrea: So what you going to do?

Calandrino: I'm going to have you removed.

Ndrea: (Unintelligible).

Calandrino: Are you going to be quiet? What's your answer?

Ndrea: Well, we going to see, man. You know, we're going to see because I want to make it known --

Calandrino: Chief, can you have him removed, please?

Unknown male: This is crazy.

Ndrea: Yeah, I'm going.

(Exhibit 3, 20:25-23:05).

(ECF No. 22, PageID.80.)

Based on these undisputed facts, which have been properly supported by the record evidence. I cannot imagine any cause of action capable of proceeding to a jury. Indeed, Plaintiff relies primarily on two[2] incidents in his complaint, and the undisputed facts do not support any constitutional or statutory violation related to those incidents.

### 2. Sign Removal

First, Plaintiff alleges in his complaint that the City of Utica removed his political sign from his front yard two times and that the police department failed to "follow up" on the removal. (ECF No. 1, PageID.5.) However, Plaintiff has set forth no evidence to show that the City, or more importantly, either of the two Defendants, were responsible for the removal. Defendants submit a police report from the City of Utica. (ECF No. 22-2, PageID.108-109.) The report states, "On 7/13/2022 at 2015 hours I was dispatched to the UTPD for a report of a larceny of political signs. I spoke with the C/V, Ndrea, who stated that two signs had been

---

[2] Plaintiff's complaint also mentions that in September of 2024 he asked to make a FOIA request but was denied. (ECF No. 1, PageID.5.) Based on the statutes cited in his complaint, I can discern no cause of action based on this allegation, or any factual allegation of how Defendants are related to this allegation. Further, in response to Defendants' motion seeking summary judgment on the entirety of Plaintiff's complaint, Plaintiff has failed to articulate any theory related to the alleged FOIA request which would survive Defendants' motion.

stolen off of his property on McClellan.  The signs were political signs, as he is running for State Representative.  No suspects were developed and the signs were valued at $8 each." (ECF No. 22-2.)   Thus, under the facts submitted by Defendants, there is no evidence that the City removed the signs, and no evidence that the police department failed to follow up on Plaintiff's complaint. Rather, a report was made, and no suspects identified for the theft of two eight-dollar signs. Plaintiff offers no facts to dispute Defendants' record evidence.

Moreover, to the extent Plaintiff is attempting to bring a failure to investigate charge based on these facts, the Supreme Court has held that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973).  The Court of Appeals has likewise made clear that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R. S.*, 410 U.S. at 619); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406 2011, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens … have no constitutional or federal statutory right to compel the investigation of another person."); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002) ("In any event, the law is also clear that there is no 'constitutional, statutory, or common law right that a private citizen has to require a public official to

10

investigate or prosecute a crime.'" (quoting *Doe v. Mayor and City Council of Pocomoke City*, 745 F. Supp. 1137, 1138 (D.Md.1990)).

Accordingly, Plaintiff's claim based on the alleged failure to investigate his sign removal fails as a matter of law.

### 3.  Removal at City Council Meeting

Next, Plaintiff's complaint relies heavily on an incident where he was removed from a City Council meeting in August 2024.  (ECF No. 1, PageID.5.) Although his complaint does not specifically so allege, Defendants submit a civil rights complaint which Plaintiff filed alleging that the removal was based on Plaintiff's national origin.  (ECF No. 22-3, PageID.111.)  But a review of the City Council meeting offers no support to any theory of national origin discrimination. Defendants have submitted the video,[3] which I have reviewed.  The relevant portion can be found at 20:28-21:43 when, after taking a Council vote, Plaintiff began speaking out of turn to the Council, first asking if the Council would be taking comments about the vote that had just been completed.  (Defs' Ex. 3, Aug. 13, 2024.)  Defendant Calandrino stated that he was the mayor, and explained that the vote was on an agenda item and the public had already been afforded an

---

[3] The full video can also be found on YouTube at: https://www.youtube.com/watch?v=xys4YcE2UjY, but the Court's citations are to the media upload of Defendants' exhibit.

opportunity to make comments on agenda items.  Plaintiff continued to question, insult, and make further retorts to the Council, despite continuously being told to be quiet and that they were trying to continue the meeting.  Plaintiff stated such things as "YOU are out of order," "You are not being nice," "You don't own this meeting."  Mayor Calandrino gave Plaintiff several instructions and warnings that he would be removed if he would not be quiet, but Plaintiff continued to talk back to the Mayor, disrupting the meeting.  Eventually, Calandrino asked the Police Chief, Defendant Kaluzny, to remove Plaintiff.  (Defs' Ex. 3, Aug. 13, 2024 Video at 21:43.)[4]

Plaintiff has not pointed to any evidence to refute this evidence and relies solely on his bald assertions and arguments made in his response, which themselves are rambling and largely illegible.  Under Rule 56, the nonmoving

---

[4] Another gentleman can be seen at the City Council meeting, also interrupting the meeting.  The other gentleman's first outburst can be seen at 10:37.  The gentleman was told he could not speak out of turn, but must speak during the time designated for public comment.  After being told to be quiet or risk being removed by the police, the gentlemen moved himself to the back of the room and stopped his outbursts momentarily. (Defs' Ex. 3, Aug. 13, 2024 Video at 11:57.)  Plaintiff can later be seen having a conversation with the gentleman while a member of the public was speaking during the designated public comment period.  (Defs' Ex. 3, Aug. 13, 2024 Video at 14:55.)  The gentleman was told again to stop speaking.  Although these warnings were not directed at Plaintiff, they occurred during the meeting where Plaintiff could certainly hear the warnings regarding outbursts and talking out of turn.  Later, immediately after Plaintiff was removed, the gentleman had another outburst and removed himself from the meeting.  (Defs' Ex. 3, Aug. 13, 2024 Video at 22:14.)

party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Plaintiff here wholly fails to provide any evidence in support of his response. And it is hard to imagine what editorialized evidence could overcome the video, which is the best evidence of what actually happened and, quite literally, speaks for itself. Supreme Court precedent has made clear that, in applying the Rule 56 standard, courts need not rely on a version of events that is "utterly discredited" by the record and should instead view "the facts in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

It is true that "even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists."

13

*E.M.A. Nationwide*, 767 F.3d at 630; *see also, Global Freight, supra*.  However, "[n]either the trial nor appellate court … will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992).  The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Here, there is hardly any record to comb through and what record is before the Court demonstrates Defendants are entitled to summary judgment.  Indeed, the complaint itself fails to set forth the facts to discern the exact legal theory on which Plaintiff relies.  Defendants have done an admirable job attempting to identify the possible causes of action, and have set forth multiple, alternative bases for summary judgment, each one of which demonstrate they are entitled to judgment as a matter of law.

### a.  Calandrino's Absolute Legislative Immunity

First, Defendant Calandrino is entitled to absolute legislative immunity based on the conduct described in Plaintiff's complaint and the facts as identified by Defendants.  Municipal legislators are immune from suit under § 1983 for conduct "in the sphere of legitimate legislative activity."  *Kent v. Ohio House of*

*Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).  "[T]he 'legislative sphere' reaches things 'generally done in a session of the [legislature] by one of its members in relation to the business before it.'"  *Id.* at 365 (alteration in original) (quoting *Gravel v. United States*, 408 U.S. 606, 624 (1972)).  Finally, Calandrino is entitled to immunity for conduct within the legislative sphere regardless of his subjective "intent and motive."  *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998).  The Eastern District of Michigan has held that "the legislative sphere includes 'presiding over the public-comment period' of municipal government meetings."  *Biggs-Leavy v. Lewis*, No. 23-CV-12123, 2024 WL 1142354, at *5 (E.D. Mich. Mar. 15, 2024) (Cox, C.J.), aff'd, No. 24-1317, 2025 WL 451369 (6th Cir. Feb. 10, 2025) (quoting *Satchel v. Dayton Township*, No. 16-cv-11518, 2018 WL 3048583, at *6 (E.D. Mich. June 20, 2018)); *see also Timmon v. Wood*, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) ("Defendants' actions toward Plaintiff during the public-comment period at each of the meetings fell within the legitimate legislative sphere.").  The same principle applies to restricting public comments to the public comment period and not allowing extemporaneous outbursts during the voting portion of a City Council meeting, and Calandrino is therefore entitled to summary judgment on Plaintiff's First Amendment individual-capacity § 1983 claims against him.

### b. Qualified Immunity of Both Defendants

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231, (2009). "A court required to rule upon the qualified immunity issue must consider" whether: (1) "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[;]" and, (2) "the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In analyzing a party's entitlement to qualified immunity, the Supreme Court has noted that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. The defense of qualified immunity allows "'ample room for mistaken judgments,' protecting

16

'all but the plainly incompetent or those who knowingly violate the law.'" *Essex v. Cnty. of Livingston*, 518 Fed. Appx. 351, 356-57 (6th Cir. 2013) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (2009)).

Here, under the undisputed evidence, Plaintiff has not identified or shown a triable issue that, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [Defendants'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.  Simply put, there is no constitutional violation by removing a disruptive citizen from a City Council meeting based on content-neutral speech.  City Council meetings are "designated" and "limited" public forums, "''designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to . . . allow persons to engage in every type of speech' in the forum." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019) (quoting *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)).  The constitutional standard that applies to a speech restriction in a limited public forum differs depending on whether the restriction is content-neutral or content-based.  *See Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021).  In the case at bar, the restriction was undoubtedly content-neutral as Plaintiff was prohibited based on his unruly outbursts, not based on the topic he was addressing.  Content-neutral regulations are permissible in limited public forums "if 'they are narrowly tailored

17

to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'" *Id.* (alteration in original) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Plaintiff's removal from a limited pubic forum under these facts was constitutional as a matter of law, as he was provided an opportunity to speak during the public comment period, was not subject to content-based restriction while speaking during the appropriate portion of the meeting, and was given multiple and ample warnings to cease his unruly behavior before being removed based on the disruption to the meeting. *See Biggs-Leavy v. Lewis*, 2024 WL 1142354*, \*7* ("[T]he Meeting was a limited public forum as a matter of law, and the City's removal order enforced a speech restriction to preserve the peaceful and orderly conduct of the Meeting.").

Moreover, Plaintiff has provided no evidence that his removal was based on his race or national origin, nor indeed has he articulated any theory for such a claim. For a constitutional claim regarding race or national origin discrimination against Defendants, Plaintiff must identify a triable issue that he was targeted or intentionally treated differently on account of his race or national origin. *Khaled v. Dearborn Heights Police Dep't*, 711 F. App'x 766, 771 (6th Cir. 2017) (citing *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012)). As he has wholly failed in this regard, Defendants are entitled to summary judgment. *See*

18

*Khaled v. Dearborn Heights Police Dep't*, 711 F. App'x at 771 (granting summary judgment where "[t]he record is wholly bereft of evidence that [the defendant] treated plaintiffs differently or worse than other residents, let alone intentionally.").

And, finally, Plaintiff cannot show a violation of the Fourth Amendment based on his removal from the meeting. The Sixth Circuit has held that "when police officers 'order persons to leave public areas . . . such police conduct, without more, [is not] a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes.'" *Youkhanna,* 934 F.3d at 523 (alterations in original) (citing *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015)). In *Youkhanna*, the Sixth Circuit held that there is no violation of the Fourth Amendment "where the person being asked to leave is not privileged to remain in the space—either because the space is no longer open to the public (for example, a building is closing or the space must be cleared of all people for safety reasons) *or because the person's behavior violated a rule, ordinance, or law (for example, by causing a disturbance)*." *Id.* (emphasis added). Such is the case here and Plaintiff cannot sustain a Fourth Amendment claim. "It is common sense that a government body should be allowed to remove people who are disrupting a public meeting, and the Michigan Open Meetings Act allows for such a removal." *Id.*

Because there is no triable issue that any constitutional right was violated based on the facts before the Court, "there is no necessity for further inquiries

19

concerning qualified immunity" and Defendants are entitled to qualified immunity as a matter of law. *Saucier*, 533 U.S. at 201.

### c. 18 U.S.C. § 242

Plaintiff purports to bring a claim under 18 U.S.C. § 242, but there is no private cause of action under that criminal statute. *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("Plaintiff has no private right of action under either of these criminal statutes [18 U.S.C. §§ 241 or 242].") (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir. 1994)). Defendants are therefore entitled to summary judgment for this claim as well.

### D. Conclusion

For the reasons discussed above, the Court should **GRANT** Defendants' motion for summary judgment (ECF No. 22) and close this case.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within **14 days** of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than **14 days** after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 18, 2026

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE